UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

----------------------------------------------------------X
ANDREW KUDERA,

                                                         Plaintiff,

v.

ASPEN INSURANCE U.S. SERVICES, INC.

                                                     Defendant.
----------------------------------------------------------X

Civil Action No._____

JURY TRIAL DEMANDED

## COMPLAINT

Plaintiff Andrew Kudera (hereinafter "Plaintiff" or "Kudera") brings this action against Aspen Insurance U.S. Services, Inc. (hereinafter "Defendant" or the "Company") for breach of contract and breach of the implied covenant of good faith and fair dealing arising out of the parties' employment relationship.

**I.   INTRODUCTION**

This is a case about a Bermuda Corporation that recruits executives based on contractual agreements, which it has no intent of honoring. The Defendant Company "invited" the Plaintiff Executive to make a $325,000 co-investment of his own money, which was supposed to be returned to him at the end of his employment, but which the Company now refuses return, brazenly cheating Plaintiff of his own money and of owed compensation. The Defendant Company conducts itself by thumbing its nose at contractual obligations, apparently believing the law does not apply to it.

**II.  PARTIES**

1. Aspen Insurance U.S. Services, Inc. is a Bermuda corporation with its principal place of

business at 590 Madison Avenue, 7th Floor, New York, New York 10022.

2. Plaintiff is a citizen of Connecticut.

### III.    JURISDICTION AND VENUE

3. This Court has jurisdiction over Plaintiffs claims pursuant to 28 USC §1332 because there is complete diversity between the parties and the matter in controversy exceeds $75,000, exclusive of interest and costs.

4. Venue with respect to this action lies in the Southern District of New York pursuant to 28 USC §1391 based on an agreement between the parties' providing for exclusive jurisdiction in the state and federal courts of New York.

### IV.    FACTUAL ALLEGATIONS

5. Plaintiff was employed by Defendant as Group Chief Actuary pursuant to a written Employment Agreement dated January 10, 2020 and amended February 1, 2020.

6. The Employment Agreement provides, in relevant part, that if Plaintiff were terminated without Cause, he would be entitled to continued salary payments for a period of 12 months and a pro rata portion of his Target Bonus ("Termination Payments").

7. The Employment Agreement provides that in order to receive the Termination Payments, Plaintiff would be required to execute a general release of claims against Defendant.

8. Pursuant to the Employment Agreement, Plaintiff entered into the Company's Senior Management Equity Plan ("MEP Agreement"), with a co-investment of three hundred twenty-five thousand dollars ($325,000).

9. The MEP Agreement provides for return of Plaintiff's co-investment upon termination of his employment with the Company.

10. On or about January 21, 2021, Plaintiff suggested to Chief Executive Officer Mark Cloutier ("Cloutier") that the Company consider eliminating his position, Group Chief Actuary, as a way to reduce expenses.

11. On or about January 27, 2021, Cloutier told Plaintiff that he believed it made sense to eliminate the Group Chief Actuary position, and that that Plaintiff and the Company should, "get to a good place" with regard to the terms of Plaintiff's departure.

12. Cloutier expressed his concern about the optics of Plaintiff's termination with regard to timing, given the upcoming year-end work. He mentioned a possible termination date during the end of the first quarter.

13. Plaintiff said that he would be flexible with regard to timing if he and the Company were able to come to an agreement soon on the terms of his departure.

14. On or about February 4, 2021, Plaintiff and Cloutier agreed to a termination date of June 30, 2021, dependent on reaching an agreement on the terms of Plaintiff's departure.

15. Cloutier told Plaintiff to contact Mo Kang ("Kang") in Human Resources to work out the details of a separation agreement.

16. On or about February 23, 2021, Plaintiff received a draft severance and release agreement and proposed revision to his Employment Contract with regard to the payment of his guaranteed bonus.

17. Plaintiff asked Bill Flatley ("Flatley") in Human Resources to explain the basis for the proposed revisions to his Employment Contract and the terms of the proposed severance and release agreement.

18. Flatley told Plaintiff that he had been told by Kang that Plaintiff had discussed and agreed to the proposed terms. However, Plaintiff had never discussed any of the terms in these documents.

19. On or about March 3, 2021, Plaintiff received a second draft proposed severance and release agreement.

20. Plaintiff indicated to Flately that the second proposed severance and release agreement was still not acceptable, as it was not consistent with the terms he had negotiated in his Employment Agreement.

21. On March 10, 2021, Plaintiff received a third proposed severance and release agreement ("proposed severance and release agreement") in an email from Flatley rejecting his requested revisions to terms that conflicted with the terms of his Employment Agreement. The email further advised him that the 21-day execution period had begun and that any revision requests would not reset the clock.

22. On March 16, 2021, Plaintiff told Cloutier that although he had been working with Kang as instructed, he was becoming frustrated with the lack of progress and thought the process of negotiating the details of his separation was taking too long. Plaintiff said that he had been told the 21-day execution period was running, however the proposed severance and release agreement was not consistent with the terms of his Employment Agreement. Plaintiff told Cloutier that he wanted to "reach a landing" by the end of the week.

23. Cloutier agreed that the negotiation process had been taking too long and advised Plaintiff to discuss the matter with Kang again, providing a list of his sticking points.

24. On March 18, 2021, Kang told Plaintiff that Cloutier had agreed to a termination date of May 7, 2021. Plaintiff told Kang that there were several issues yet to be resolved and

that the proposed severance and release agreement was not consistent with the terms of his Employment Agreement.

25. Later that day, Plaintiff again objected to the inclusion of the materially different terms, explaining to Cloutier that among other issues, the 12-month non-compete period in the proposed severance and release agreement was inconsistent with the terms of the Management Equity Plan, which included a 6-month non-compete period.

26. Under the Employment Agreement, since Plaintiff was terminated without Cause, he is entitled to Termination Payments, subject only to his execution of a "general release of claims" against the Company.

27. However, Plaintiff was instructed that to receive the Termination Payments, he had to sign aseverance and release agreement with materially different terms than the Employment Agreement, well beyond the scope of a "general release of claims".

28. The proposed severance and release agreement contains several clauses that not only differ from the terms of the Employment Agreement, but are in direct conflict.

29. The proposed severance and release agreement requires as a condition precedent to Plaintiff's receipt of the Termination Payments, that Plaintiff, "satisfactorily perform[ ] his duties" and "comply[ ] with the terms of this Agreement and all applicable Company policies and procedures and provisions of the Employment Agreement", "*all as determined in the Company's sole discretion.*" (emphasis added).

30. Confusingly, the proposed severance and release agreement states that Plaintiff has been given notice of termination without Cause, but also makes his entitlement to Termination Payments contingent upon, "not being terminated for Cause".

31. In contrast with the Employment Agreement, the proposed severance and release agreement provides that, "[a]ny payments made as part of the Annual Bonus program are at the *sole discretion of the company*." (emphasis added).

32. The proposed severance and release agreement contains a 12-month non-compete period, in contrast with the MEP Agreement's 6-month non-compete period.

33. The proposed severance and release agreement contains a provision entitling the Company to liquidated damages in the amount of $100,000 in the event Plaintiff breaches the agreement's non-disparagement provision.

34. The proposed severance and release agreement contains a provision entitling the Company to, "recover its attorneys' fees and costs" in the event of breach by Plaintiff. The Employment Agreement contains no such provision.

35. The proposed severance and release agreement contains an acknowledgement clause stating, "Employee is not otherwise entitled to the [Termination Payments]" if not for "this Agreement and the Exhibit A-Post-Employment Release", in direct conflict with the Plaintiff's entitlements under the Employment Agreement.

36. The proposed severance and release agreement contains the following integration clause, which explicitly forecloses any reliance on the terms of the Employment Agreement: "This Agreement constitutes the entire agreement and understanding between the Parties with regard to the subject matter herein,i.e., the severance to be paid to Employee in exchange for a release of claims. *It supersedes and cancels any prior or contemporaneous understandings, agreements, or representations* by or between the Parties, written or oral, relating to the subject matter herein." (emphasis added).

37. Through his attorneys, Plaintiff contacted Defendant to discuss his concerns with the differences between the terms of his negotiated Employment Agreement and the proposed severance and release agreement.

38. Defendant refused to address Plaintiff's concerns, refused to provide the contractually required general release of claims without additional material terms, refused to pay Plaintiff the Termination Payments, and refused to return Plaintiff's MEP co-investment.

39. Plaintiff offered Defendant chance after chance to avoid this litigation and reach what should have been a simple resolution. But Defendant has refused at every turn.

40. When Plaintiff refused to agree to Defendant's materially different terms, Defendant turned off his company email and effectively terminated his employment.

41. Plaintiff made it clear that he was ready, willing and able to continue working until the agreed upon termination date, but would not agree to the proposed severance and release.

42. Defendant did not resume Plaintiff's email access.

43. Defendant's conduct is part of a larger scheme to maximize its own profit by ridding itself of contracts that it deems inconvenient.

### FIRST CAUSE OF ACTION
### BREACH OF CONTRACT

44. Plaintiff repeats and incorporates by reference all of the preceding paragraphs as thoughfully set forth herein.

45. The Employment Agreement and MEP Agreement are valid and binding contracts between Plaintiff and the Company.

46. The Employment Agreement provides that Plaintiff is entitled to Termination Payments upon executing a "general release of claims" against Defendant.

47. The Company breached the Employment Agreement when it terminated Plaintiff without Cause and refused to pay him the Termination Payments because he would not execute a severance and release agreement with materially different terms.

48. The MEP Agreement provides for return of Plaintiff's three hundred twenty-five thousand dollar ($325,000) co-investment upon termination of his employment with the Company.

49. The Company breached the MEP Agreement when it terminated Plaintiff and refused to return his co-investment because he would not execute a severance and release agreement with materially different terms.

50. Plaintiff respectfully requests that Defendant be held liable on this claim and requests all appropriate relief be awarded in his favor.

## SECOND CAUSE OF ACTION
## BREACH OF THE DUTY OF GOOD FAITH AND FAIR DEALING

51. Plaintiff repeats and incorporates by reference all of the preceding paragraphs as though fully set forth herein.

52. The Employment Agreement and MEP Agreement are valid and binding contract between Plaintiff and the Company.

53. The provision entitling Plaintiff to 12 months of salary payments and a pro rata bonus in the event of termination without Cause was material inducement for Plaintiff's acceptance of the Employment Agreement.

54. The MEP Agreement provision entitling Plaintiff to the return of his co-investment upon his termination was material inducement for Plaintiff's three hundred twenty-five thousand-dollar ($325,000) co-investment.

55. After notifying Plaintiff of his termination without Cause, Defendant sought to avoid paying him what he was entitled to, withholding his Termination Payments and MEP co-investment unless he agreed to numerous additional one-sided terms, thus depriving Plaintiff of the benefits of the Employment Agreement and MEP Agreement.

56. Plaintiff respectfully requests that Defendant be held liable on this claim and requests all appropriate relief be awarded in his favor.

### THIRD CAUSE OF ACTION
### DECLARATORY JUDGMENT

57. Plaintiff repeats and incorporates by reference all of the preceding paragraphs as thoughtfully set forth herein.

58. Plaintiff is entitled to a declaration that the proposed severance and release agreement is not a "general release of claims against the Employer and its Affiliates" as identified in the Employment Agreement.

59. Plaintiff is entitled to a declaration that Defendant must execute a general release of claims, as identified in the Employment Agreement and, upon execution by Plaintiff, pay him all amounts owed pursuant to the Employment Agreement and MEP Agreement.

### PRAYER FOR RELIEF

Plaintiff hereby requests the following relief:

    A. Award compensatory damages;

    B. Award punitive damages;

C. Award attorneys' fees and costs;

D. Award pre-judgement interest;

E. Award post-judgement interest;

F. Award such other relief in law or equity as this Court deems appropriate.

**JURY TRIAL DEMANDED**

Plaintiff respectfully requests a jury trial on all questions of fact raised by his Complaint.

Respectfully Submitted,

PLAINTIFF
ANDREW KUDERA

/s/ *Jill Saluck*
Jill Saluck (NY2848786)
Saluck, Halper & Lehrman PLLC
75 S. Broadway, Suite 400
White Plains, NY 10601
tel. (914)246-2686
jsaluck@employ-law.com